1

2

3

4

5                     IN THE UNITED STATES DISTRICT COURT FOR THE

6                          EASTERN DISTRICT OF CALIFORNIA

7

8    CHESTER S. GARBER; BETTY C.           )    1: 09- CV-0242 AWI SMS
     TING; EMILIA C. TING, M.D.;           )
9    EMILIA C. TING, M.D., INC.;           )    ORDER GRANTING
     GARBER T. SERVICES CO., INC.;         )    DEFENDANTS' MOTION TO
10   AND GOLDEN VALLEY AERO, INC.,         )    DISMISS AND DISMISSING
                                           )    COMPLAINT WITH LEAVE TO
11                       Plaintiffs,       )    AMEND
             v.                            )
12                                         )    [Document #40]
     CITY OF CLOVIS; ABBY SPENCER          )
13   SGT. MCFADDEN; in Their Individual    )
     and Official Capacities; and DOES 1-75, )
14   Inclusive,                            )
                         Defendants.       )
15   _____ )

16

17                                    BACKGROUND

18          This action stems from the search of Plaintiffs' residence on or about February 7, 2007,

19   and the seizure of eight computers.   Six of the computers contained medical records, which were

20   the property of Plaintiffs Emilia C. Ting, M.D., Inc. and Emilia C. Ting, M.D.   The search was

21   conducted pursuant to a warrant that concerned Plaintiff Chester S. Garber's potential possession

22   of child pornography.   During the search, Plaintiffs Chester S. Garber and Betty Ting were

23   present and told officers that the computers contained medical records, including the medical

24   records of Plaintiffs Emilia Ting, Betty Ting, and Chester S. Garber, business records of

25   Plaintiffs Chester S. Garber and Betty C. Ting, and photographs and business records of

26   Plaintiffs Garber Services Co., Inc., and Golden Valley Aero, Inc.    No criminal charges were

27   filed against Plaintiff Chester S. Garber or any other Plaintiff.

28

On May 17, 2010, Plaintiffs filed an amended complaint pursuant to 42 U.S.C. § 1983. The first cause of action alleges Defendants Spencer and McFadden violated Plaintiffs right to be free from unlawful search and seizure in violation of Plaintiffs' Fourth and Fourteenth Amendment rights.   The second cause of action alleges Defendant City of Clovis is liable because Defendants Spencer and McFadden's actions were the result of Defendant City of Clovis's negligent hiring, training, staffing, and supervising.

Defendants have filed a motion to dismiss the first amended complaint or, in the alternative, a motion for a more definite statement.   Defendants contend that Plaintiffs have failed to adequately allege the violation of any constitutional right.   Defendants contend that California Penal Code Section 1524 does not provide for 42 U.S.C. §1983 liability absent a constitutional violation.    Defendants contend that HIPAA does not provide for Section 1983 liability.   Defendants contend that the are entitled to qualified immunity.  Defendants contend that the complaint fails to allege sufficient facts to support a cause of action against Defendants Matt McFadden, Jim Zulim, and City of Clovis.   Defendants contend that collateral estoppel bars Plaintiffs from asserting that the complained of search was invalid.

Plaintiffs oppose Defendants' motion.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party.  Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th  Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The court must also assume that general

2

allegations embrace the necessary, specific facts to support the claim.  Smith v. Pacific Prop. and

Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004).  However, the court is not required "to accept as

true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v.

Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Although they may provide the

framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of

elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide,

Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations must
> be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Iqbal, 129 S.Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks
> more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are 'merely consistent with' a defendant's liability, it
> stops short of the line between possibility and plausibility of 'entitlement to
> relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a
> context specific task that requires the reviewing court to draw on its judicial
> experience and common sense.  But where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of misconduct, the complaint has
> alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-

conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

1  suggestive of a claim entitling the plaintiff to relief." <u>Moss v. United States Secret Service</u>, 572

2  F.3d 962, 969 (9th Cir. 2009).

3                                    **ALLEGED FACTS**[1]

4          The complaint alleges that on or about February 7, 2007, officers of the Clovis Police

5  Department under the command of Defendant Spencer entered Plaintiffs' residence in Fresno,

6  California and seized eight computers, which contained Plaintiffs' personal and intellectual

7  property.

8          The complaint alleges that Defendants' entry and subsequent search was pursuant to a

9  search warrant secured on February 6, 2007.  The warrant was based on Defendant Spencer's

10  statement of probable cause.   The statement of probable cause declared, in relevant part, that

11  DVDs, allegedly made by Plaintiff Chester S. Garber, had been given to an adult waitress that

12  Plaintiff Garber had befriended at a restaurant in Clovis. This waitress gave these DVDs to

13  Defendant Spencer.

14          The complaint alleges that Defendant Spencer viewed the DVDs.   In her statement,

15  Defendant Spencer stated that she observed several images that were possibly child pornography

16  and erotica.   The complaint alleges Defendant Spencer asked for Defendant McFadden's

17  assistance. The complaint alleges that they both viewed all of the DVDs' images, which included

18  images of outdoor scenery and images of adult females.   The complaint alleges that the two

19  officers determined that they had seen one image that met the state and federal definitions of

20  child pornography, 40 images of "child erotica,", one image that was "possibly" child

21  pornography, and 24 images that were "possibly" child erotica.

22          The complaint alleges that Defendant Spencer's affidavit stated Defendant Spencer's

23  conclusions were based on Defendant Spencer's experience as an officer, her Bachelor of Arts

24

25          [1] The alleged facts are taken from the amended complaint.   Because the court looks to
26  the complaint's material allegations to resolve a motion to dismiss pursuant to Rule 12(b)(6),
   additional facts set forth in the motion to dismiss and opposition brief have not been included or
27  considered.

28                                          4

degree in Psychology, "being a female", and that she was familiar with the difference between minor and adult females.    The complaint alleges that the affidavit contained statements about characteristics allegedly and generally found in people who produce, trade, distribute, or possess images/pictures of minors engaged in sexually explicit conduct.    The complaint alleges Defendant Spencer did not provide the basis for this statement and did not state her background, training, and/or experience in the determination and prosecution of child pornography cases. The complaint alleges that Defendant Spencer's statement of probable cause did not draw any nexus between the characteristics that she described and any of the pictures that she and Defendant McFadden had viewed.    The complaint alleges that Defendant Spencer did not state in her affidavit that any of the images were of minors engaged in sexually explicit conduct.

The complaint alleges that, at the time of the search, Plaintiffs Garber and Betty Ting were present.   The complaint alleges that both Plaintiffs told Defendant Spencer that the computers being seized contained medical records of the individual patients of Plaintiff Emilia C. Ting, M.D., including the medical records of Plaintiffs Emilia Ting, Betty Ting and Chester S. Garber, that the computers contained business records of Plaintiffs Chester S. Garber and Betty C. Ting, and that the computers contained photographs and business records of Plaintiffs Garber Services Co., Inc. and Golden Valley Aero, Inc.    The complaint alleges Defendant Spencer did not respond to these statements and seized all of the computers.

The complaint alleges that six of the eight computers contained medical records, which were the property of Plaintiff Emilia C. Ting, M.D., Inc. and Plaintiff, Emilia C. Ting, M.D. The medical records contained personally identifiable health information.   The complaint alleges more than 1,000,000 of such items of personally identifiable health information were seized.

The complaint alleges that although Defendants were notified that the medical records of a physician who was not accused of any wrongdoing were being seized, Defendants ignored the requirements of California Penal Code § 1524 by seizing the records without the appointment of a special master.

The complaint alleges that on March 20, 2007, Plaintiffs filed an Ex-Parte Application for Recovery of Seized Property in the Fresno County Superior Court. The moving papers contained a declaration by attorney Roger Nuttall that he had viewed the four DVDs that served as the basis for the search warrant and that the DVDs depicted photos used in Plaintiff Garber's professional photography business.   The complaint alleges Mr. Nuttall opined that the pictures did not appeal to the prurient interest based on contemporary community standards, did not lack serious literary or artistic value, and would not be characterized as child pornography.

The complaint alleges that the parties stipulated for the return of five computers, which the court approved on April 10, 2007.  The five computers were returned to Plaintiffs on or about April 26, 2007.   The complaint alleges that the Clovis Police Department made and has kept copies of the information contained on these five computers, including individual patient medical records.  The complaint alleges that three computers remain in the custody of the Clovis Police Department.

The complaint alleges that on July 20, 2007, Plaintiff Garber filed a Motion to Suppress Evidence and Traverse Pursuant to California Penal Code Section 1538.5. The state court heard the motion on August 16, 2007 and denied Plaintiff Garber's motion on October 11, 2007.

The complaint alleges that on or about February 7, 2008, Defendant City of Clovis advised Plaintiffs' counsel that it would make copies of business records seized on February 7, 2007, and provide them to Plaintiffs by March 31, 2008.   The complaint alleges that on or about April 25, 2008, Defendant City of Clovis advised Plaintiffs' counsel that the Department was having trouble completing that task.   To expedite the process, Plaintiffs' counsel suggested that all items seized from the residence on February 7, 2007, be immediately returned.   The Defendant City of Clovis agreed that this would be a viable option if Plaintiffs agreed that the Defendant City of Clovis could delete the files/images that Defendant City of Clovis alleged constituted child pornography.   The complaint alleges that Plaintiffs would not agree to this condition because it has been their consistent position that none of the pictures constituted child

pornography.

The complaint alleges Plaintiffs are informed and believe that Defendant City of Clovis referred the pictures to the United States Attorney's Office.   The complaint alleges that over two years passed since the seizure, and no criminal charges have ever been filed by any prosecuting authority.

The complaint alleges Defendants Spencer and McFadden acted unreasonable and in reckless disregard for the truth in wrongfully seeking, securing, and carrying out a search warrant based upon inaccurate and inadequate information.  The complaint alleges Defendants Spencer and McFadden failed to confirm with individuals experienced in the field of child pornography whether the pictures viewed by Defendants Spencer and McFadden actually constituted child pornography.

The complaint alleges that, at all times mentioned, Defendants Spencer and McFadden acted under the color of the statutes, ordinances, regulations, customs, and usages of the State of California and Defendant City of Clovis, and they were acting pursuant to Defendant City of Clovis's official policy, as created by Defendant Clovis Police Chief Jim Zulim.   The complaint alleges that Defendants Spencer and McFadden were acting according to official or tacitly approved policy, practices, and customs of Defendant City of Clovis and/or that Defendants Spencer's and McFadden's conduct was ratified by Defendant City of Clovis.

The complaint alleges that Defendant City of Clovis, through Defendant Zulim, had a policy or custom of negligently hiring, training, staffing, and supervising Defendants Spencer and McFadden.   The complaint alleges that Defendant City of Clovis's negligent acts and/or omissions were a proximate legal cause of the injuries to Plaintiffs.

The complaint alleges that Defendant, City of Clovis, through Defendant Zulim, and pursuant to the policies or customs of the Defendant City of Clovis, negligently hired, trained, staffed, and supervised Defendants Spencer and McFadden.   The complaint alleges Defendant City of Clovis failed to adequately and properly supervise, control, and discipline Defendants

Spencer and McFadden in their duties to determine what facts were sufficient, if true, to show

probable cause that a crime has been committed.   The complaint alleges that in this case,

Defendants Spencer and McFadden did not have the necessary training, education, and

supervision to determine if the pictures that they examined and alleged were "child pornography"

met the legal definition of child pornography.

**DISCUSSION**

**A.  Collateral Estoppel**

Defendants contend they are entitled to collateral estoppel on any of Plaintiffs' claims

that allege the search violated their constitutional rights.   The complaint alleges that Plaintiff

Garber's motion to suppress the search was denied by the California state court.   As such,

Defendants argue this issue cannot be re-litigated in this civil rights action pursuant to 42 U.S.C.

§ 1983.

According to the doctrine of collateral estoppel, also known as issue preclusion, "once a

court has decided an issue of fact or law necessary to its judgment, that decision may preclude

relitigation of the issue in a suit on a different cause of action involving a party to the first case."

Allen v. McCurry, 449 U.S. 90, 94 (1980).   In determining whether to apply collateral estoppel

to an issue litigated in California state court, a federal court must look to California law.

California law requires that: "(1) the issue necessarily decided at the previous proceeding is

identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final

judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party

or in privity with a party at the first proceeding."  Granite Rock Co. v. International Broth. of

Teamsters, Freight, Construction, General Drivers, Warehousemen & Helpers, Local 287

(AFL-CIO), 649 F.3d 1067, 1070 (9th Cir. 2011); Reyn's Pasta Bella, LLC v. VISA USA, Inc.,

442 F.3d 741, 746 (9th Cir. 2006).

Defendants contend that collateral estoppel applies to the state court's denial of Plaintiff

Garber's motion to suppress.   This contention lacks merit because the suppression ruling was

8

1   not followed by a conviction or an acquittal, and it was not a final judgment under California

2   law.  Lombardi v. City of El Cajon, 117 F.3d 1117, 1121 (9th Cir. 1997); Heath v. Cast, 813

3   F.2d 254, 258 (9th Cir. 1987).   Thus, Plaintiffs' claims are not barred by collateral estoppel.

4   **B.  Alleged Omissions by Defendants in Obtaining the Warrant**

5         The complaint alleges that Defendants Spencer and McFadden violated the Fourth

6   Amendment, made applicable to the states through the Fourteenth Amendment, because the

7   affidavit in support of the search warrant lacked probably cause.   The complaint alleges that

8   Defendants Spencer and McFadden:

9   > acted unreasonable and in reckless disregard for the truth in wrongfully seeking,
    > securing and carrying out a search warrant based upon inaccurate and inadequate
10  > information and their failure to confirm with individuals experienced in the field
    > of child pornography whether the pictures viewed by Defendants, Officers
11  > Spencer and McFadden, actually constituted child pornography.

12  Amended Complaint at ¶ 29.

13        The Fourth Amendment protects the right of the people to be secure in their persons,

14  houses, papers, and effects against unreasonable searches and seizures. U.S. Const. amend IV.

15  The Fourth Amendment to the United States Constitution is applicable to the States by the

16  Fourteenth Amendment.   Maryland v. Pringle, 540 U.S. 366, 369 (2003); California v. Minjares,

17  443 U.S. 916, 921 (1979).

18        There is a "presumption of validity with respect to [a] search warrant." Franks v.

19  Delaware, 438 U.S. 154, 171 (1975).   A judge's determination of probable cause should be paid

20  great deference by any reviewing courts.  See, e.g., United States v. Krupa,  2011 WL 353212, at

21  *2 (9th Cir. 2011); Millender v. County of Los Angeles, 620 F.3d 1016, 1025 (9th Cir. 2010).

22  The standard for reviewing a court's finding that there was probable cause to issue a warrant is

23  that the court must have "a 'substantial basis for . . . conclud[ing]' that a search would uncover

24  evidence of wrongdoing, the Fourth Amendment requires no more."   Illinois v. Gates,  462 U.S.

25  213, 236-37 (1983).   However, a warrant obtained through "judicial deception" violates the

26  Fourth Amendment.   Franks v. Delaware, 438 U.S. 154, 170-71 (1978); Butler v. Elle, 281 F.3d

27

28                                              9

1014, 1024 (9th Cir. 2002).  "A misrepresentation in the affidavit constitutes a violation of the Fourth Amendment if the misrepresentation is material."  Crowe v. County of San Diego, 608 F.3d 406, 434-35 (9th Cir. 2010).  "Misrepresentations can be affirmative or based on omission. A misrepresentation based on an omission is material only where the omitted facts 'cast doubt on the existence of probable cause.'"  Id. (quoting United States v. Garza, 980 F.2d 546, 551 (9th Cir. 1992)) (internal quotation marks omitted).  A search or seizure pursuant to an invalid warrant constitutes an invasion of the subject's constitutional rights at the time of the unreasonable governmental intrusion.  Millender v. County of Los Angeles, 620 F.3d 1016, 1024 (9th Cir. 2010).

If a plaintiff is able to demonstrate that a warrant was issued as the result of a material misrepresentation, a police officer defendant may still be entitled to summary judgment on qualified immunity grounds, unless the plaintiff can also demonstrate that the police officer deliberately falsified information presented to the judge or recklessly disregarded the truth. Hervey v. Estes, 65 F.3d 784, 789 (9th Cir. 1995).

Plaintiffs contend that there was no probable cause to support the issuance of a search warrant, and thus, Defendants Spencer and McFadden violated Plaintiffs rights when they searched Plaintiffs' residence and seized the computers.  Specifically, Plaintiffs argue that Defendant Spencer failed to make any statements in her affidavit to sufficiently draw a nexus between any of the pictures' characteristics and the statutes allegedly violated.  Defendants maintain that they are entitled to qualified immunity for their actions to secure the warrant, along with their search of the residence and seizure of the computers.

 "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, – U.S.– , 129 S.Ct. 808, 815 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Millender v. County of Los Angeles, 620 F.3d 1016, 1023 (9th Cir. 2010); Rodis v. City, County of San Francisco, 558 F.3d

964, 968 (9th Cir. 2009).  "Qualified immunity balances two important interests – the need to
hold public officials accountable when they exercise power irresponsibly and the need to shield
officials from harassment, distraction, and liability when they perform their duties reasonably."
Pearson, 129 S.Ct. at 815; Rodis, 558 F.3d at 968.  "The entitlement is an immunity from suit
rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a
case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985);
Rodis, 558 F.3d at 968.    The defendant bears the burden of establishing qualified immunity.
Crawford-El v. Britton, 523 U.S. 574, 586- 87 (1998).

The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step
approach to qualified immunity.   The first step requires the court to ask whether "[t]aken in the
light most favorable to the party asserting the injury, do the facts alleged show the officer's
conduct violated a constitutional right?"  Saucier, 533 U.S. at 201; Bull v. City and County of
San Francisco, 595 F.3d 964, 971 (9th Cir. 2010); Millender, 564 F.3d at 1148. "If the answer to
the first inquiry is yes, the second inquiry is whether the right was clearly established: in other
words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the
situation he confronted.'" Millender, 564 F.3d at 1148 (quoting Saucier, 533 U.S. at 201).   In
Pearson v. Callahan, – U.S. – , 129 S.Ct. 808 (2009), the Supreme Court held that "judges of the
district courts and the courts of appeals should be permitted to exercise their sound discretion in
deciding which of the two prongs of the qualified immunity analysis should be addressed first in
light of the circumstances in the particular case at hand."  Id. at 818; Bull, 595 F.3d at 971.

In cases where the constitutional issue is whether a warrant's affidavit supported probable
cause, the Ninth Circuit has "effectively intertwine[d] the qualified immunity question (1)
whether a reasonable officer should have known that he acted in violation of a plaintiff's
constitutional rights with (2) the substantive recklessness or dishonesty question." Butler v. Elle,
281 F.3d 1014, 1024 (9th Cir. 2002).   This is because "no reasonable officer could believe that it
is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in

1   seeking a warrant."   Id.

2        To defeat Defendants assertions of qualified immunity, the complaint must (1) make a

3   substantial showing that the challenged warrant petition contained misrepresentations or

4   omissions that were deliberate falsehoods or demonstrated a reckless disregard for the truth and

5   (2) the misrepresentations or omissions were material because probable cause could not be

6   established without them.   Beltran v. Santa Clara County, 2010 WL 2990770, at *1 (9th Cir.

7   2010);   Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002); Liston v. County of Riverside, 120

8   F.3d 965, 973 (9th Cir. 1997); Hervey v. Estes, 65 F.3d 784, 789 (9th Cir. 1995); see also Greene

9   v. Camreta, 588 F.3d 1011, 1035 (9th Cir. 2009).   The pertinent question is whether a reasonably

10  well-trained officer in the defendant officer's position would have known that his affidavit failed

11  to establish probable cause and that he should not have applied for the warrant.   Millender,  620

12  F.3d at 1032-33.

13       The complaint fails to allege that Defendants' deliberately or recklessly made false

14  statements or omissions in the affidavit that were material to the finding of probable cause for the

15  search and seizure of Plaintiffs' computers.   The affidavit provided information on Defendant

16  Spencer's training and experience.    The affidavit explained how Defendant Spencer obtained

17  the DVD's and her interview with Nicole Echelard.    The affidavit provided Defendant

18  Spencer's conclusion that she believed the DVD's continued unlawful material.   The court

19  agrees with Defendants that the complaint fails to allege what information in the warrant was

20  inaccurate, which information Defendants knew was inaccurate, and how inaccurate information

21  resulting in the warrant being issued.   At best, the complaint only alleges one defense attorney's

22  opinion that these same DVD's did not contain illegal material.    Such an allegation, even if

23  presumed true, is insufficient to allege a violation of the Fourth Amendment.

24       The Supreme Court has noted, "qualified immunity . . . provides ample protection to all

25  but the plainly incompetent or those who knowingly violate the law."   Malley v. Briggs, 475

26  U.S. 335, 341 (1986).  Based on the amended complaint's allegations, Defendants Spencer and

27

28                                          12

1  McFadden's conduct does not rise to this level, and therefore they are entitled to qualified

2  immunity based on the complaint's allegations.   Because it might be possible for Plaintiffs to

3  allege additional facts to show Defendants' knowledge of false information, the court will

4  dismiss this claim with leave to amend.

5  **C.  Civil Rights Liability Premised on HIPAA and/or California Penal Code § 1524**

6          To the extent Plaintiffs base their civil rights claim on HIPAA or state law, Plaintiffs'

7  claims must be dismissed.   Title 42 U.S.C. § 1983 provide a vehicle for a Plaintiff seeking relief

8  for violations of the "Constitution and laws."   However, if there is no basis for a private cause

9  of action, there is no right under 42 U.S.C. § 1983. <u>Gonzaga University v. Doe</u>, 536 U.S. 273,

10 286 (2002);  <u>AlohaCare v. Hawaii, Dept. of Human Services</u>, 572 F.3d 740, 746 (9th Cir. 2009).

11         The complaint alleges violations of HIPAA.   The Ninth Circuit has found that HIPAA

12 provides no private right of action.  <u>Webb v. Smart Document Solutions, LLC</u>,  499 F.3d 1078,

13 1081 (9th Cir. 2007).   Because HIPAA does not provide for a private right of action, HIPAA

14 cannot serve as "the Constitution and laws" upon which a Section 1983 claim can be based.  As

15 such, any 1983 claims based on HIPAA are subject to dismissal without leave to amend

16         The complaint also alleges violations of California Penal Code § 1524.   California Penal

17 Code § 1524 is not actionable under 42 U.S.C. § 1983 unless the violation of that law also results

18 in a constitutional or federal law violation.  <u>Gabbert v. Conn</u>, 131 F.3d 793, 804 (9th Cir. 1997).

19 As discussed above, the complaint does not allege a violation of the Fourth Amendment.   Thus,

20 Plaintiffs 1983 claims based on allegations that Defendants violated California Penal Code §

21 1524 are subject to dismissal without leave to amend.

22 **C.  Liability of the City of Clovis**

23         Defendants contend that the complaint fails to allege any constitutional claim against

24 Defendant City of Clovis.  Local governments can be "persons" subject to liability under 42

25 U.S.C. § 1983.  <u>Monnell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690 (1978).  However, a local

26 government unit may not be held responsible for the acts of its employees under a respondent

27

28                                                      13

1   superior theory of liability.  <u>Monell</u>, 436 U.S. at 691; <u>Fuller v. City of Oakland</u>, 47 F.3d 1522,

2   1534 (9th Cir. 1995).  Rather, to state a claim for municipal liability, a plaintiff must allege that

3   he suffered a constitutional deprivation that was the product of a policy or custom of the local

4   government unit.  <u>See</u> <u>City of Canton, Ohio, v. Harris</u>, 489 U.S. 378, 385 (1989).   A Section

5   1983 plaintiff may establish local government liability based on official policy or custom only by

6   (1) alleging and showing that a city or county employee committed the alleged constitutional

7   violation under a formal governmental policy or longstanding practice or custom that is the

8   customary operating procedure of the local government entity; (2) establishing that the individual

9   who committed the constitutional tort was an official with final policy-making authority and that

10  the challenged action itself was an act of official governmental policy which was the result of a

11  deliberate choice made among various alternatives; or (3) proving that an official with final

12  policy-making authority either delegated policy-making authority to a subordinate or ratified a

13  subordinate's unconstitutional decision or action and the basis for it.  <u>Monell</u>, 691; <u>Gillette v.</u>

14  <u>Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

15       A local government may also be liable for constitutional violations resulting from its

16  failure to supervise and train, but only where the inadequacy of said supervision and training

17  amounts to deliberate indifference. <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989);

18  <u>Mackinney v. Nielsen</u>, 69 F.3d 1002, 1010 (9th Cir. 1995); <u>Davis v. City of Ellensburg</u>, 869 F.2d

19  1230, 1235 (9th Cir. 1989).   There needs be a close causal nexus between the alleged deficient

20  supervision and training and the injury suffered. Only where a failure to supervise and train

21  reflects a "deliberate or conscious choice" by a local government can the local government be

22  liable under section 1983. <u>Harris</u>, 489 U.S. at 389. Further, the plaintiff must demonstrate that the

23  alleged deficiency in supervision and training actually caused the requisite indifference.  <u>Id</u>. at

24  391. The appropriate inquiry is therefore whether the injury would have been avoided "had the

25  employee been trained under a program that was not deficient in the identified respect."  <u>Id</u>.

26       The complaint alleges that Defendant City of Clovis is responsible for Defendants

27

28                                          14

Spencer's and McFadden's actions pursuant to a "policy or custom" of negligently hiring, training, staffing, and supervising or because of its ratification of unlawful, deliberate, malicious, reckless, and wanton conduct.   The complaint's only specific allegation is that Defendant Spencer and Defendant McFadden "did not have the necessary training, education and supervision to determine if the pictures that they examined and alleged were 'child pornography' met the legal definition of child pornography."   The affidavit does state Defendant Spencer's reasons for her conclusions regarding potential violations.   Plaintiffs' argument is that this training, education, and supervision were insufficient.   However, the complaint fails to allege how Defendants' training, education and supervision were insufficient.   The court cannot find as a matter of law that a Bachelor of Arts degree in Psychology,  "being female", and knowing the "difference between minor and adult females", as a matter of law, is insufficient training for an officer to giver her opinion on whether materials were or "were possibly" child pornography or child erotica.   Such questions are not so complex that a highly trained expert with significant training and experience in determining which pictures violate the law is required by the Fourth Amendment.  The affidavit does explain Defendants' training, education, and supervision.

Plaintiffs fail to sufficiently allege a specific custom or policy of action or inaction that caused the alleged constitutional violation.   Plaintiffs fail to allege a conscious or deliberate choice by Defendant City of Clovis to improperly seize computers containing alleged child pornography absent additional allegations.   Given that the court finds that the complaint fails to state a claim, the claim against Defendant City of Clovis will be dismissed with leave to amend.

**D.  Liability of Police Chief Jim Zulim**

Defendant contends that the complaint fails to state a claim against Defendant Zulim.

To prevail on any Section 1983 claim, a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.   Rizzo v. Goode, 423 U.S. 362, 371-72 (1976).   The Supreme Court recently emphasized that the term "supervisory liability," loosely

1   and commonly used by courts and litigants alike, is a misnomer.   Ashcroft v. Iqbal, – U.S. – 129

2   S.Ct. 1937, 1949 (2009).   Supervisory personnel are generally not liable under Section 1983 for

3   the actions of their employees under a theory of respondeat superior.   Id. at 1948; Taylor v. List,

4   880 F.2d 1040, 1045 (9th Cir. 1989).   "[A] plaintiff must plead that each Government-official

5   defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129

6   S.Ct. at 1948.   A supervisory defendant cannot be held liable based on his or her knowledge and

7   acquiescence in a subordinate's unconstitutional conduct because government officials,

8   regardless of their title, can only be held liable under Section 1983 for his or her own conduct

9   and not the conduct of others. Iqbal, 129 S.Ct. at 1949.   Even knowledge and acquiescence of a

10   subordinate's misconduct is insufficient to establish liability; each government official is only

11   liable for his or her own misconduct.   Id.

12       For example, in Iqbal, a Pakistani Muslim man, was arrested and detained in the days

13   following the attacks of September 11, 2001.   Iqbal,129 S.Ct. at 1942.   He alleged that he had

14   been subjected to "harsh conditions of confinement on account of his race, religion, or national

15   origin" by former Attorney General of the United States John Ashcroft and Federal Bureau of

16   Investigation ("FBI") Director Robert Mueller because they had authorized an unconstitutional

17   detention policy.   Id.   The Supreme Court explained that "bare assertions . . . amount[ing] to

18   nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination

19   claim," for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of

20   truth.   Id. at 1951 (quoting Twombly, 550 U.S. at 555).   The Supreme Court explained that the

21   court should not discount such allegations because they are "unrealistic or nonsensical," but

22   rather because they do nothing more than state a legal conclusion – even if that conclusion is cast

23   in the form of a factual allegation.   Id. 129 S.Ct. at 1951.   Thus, in Iqbal, the Supreme Court

24   assigned no weight to the plaintiffs conclusory allegation that former Attorney General Ashcroft

25   and FBI Director Mueller knowingly and willfully subjected him to harsh conditions of

26   confinement "solely on account of [his] religion, race, and/or national origin and for no

27

28                                                          16

1  legitimate penological interest." Id. (quoting plaintiff's complaint).

2       The complaint does not allege sufficient facts to show that Defendant Zulim personally

3  participated in the alleged deprivation of constitutional rights.   Plaintiff has only connected

4  Defendant Zulim by alleging he is responsible for a "policy or custom" of negligently hiring,

5  training, staffing, and supervising.   As discussed above, the court cannot find that a policy or

6  custom that allowed an officer who had a Bachelor of Arts degree in Psychology, was "female",

7  and knew the "difference between minor and adult females", to give her opinions on pictures that

8  "were" or "were possibly" child pornography or child erotica violate the Constitution.   Even

9  assuming that the Constitution requires more training and experience to offer such an opinion,

10  the complaint fails to allege any facts demonstrating that Defendant Zulim knew of a pattern of

11  violations before the events at issue in this action.   Thus, the claim against Defendant Zulim is

12  subject to dismissal with leave to amend.

13  **E. Alleged Improper Search of the Computers' Content**

14       In their brief, Plaintiffs focus on legal authority concerning precautions the Constitution

15  requires when searching the content of a computer, such as the appointment of a special master.

16  The complaint does not provide any information on how the seized computers's content was

17  reviewed nor does the complaint  allege how Defendants searched the computers' content.

18  Rather, the complaint alleges the computers were unlawfully seized on February 7, 2007  and

19  have been unlawfully kept by Defendants.   Because the complaint only discussed the seizure of

20  the computers, not a search of files or documents that were privileged, the complaint fails to

21  sufficiently allege a constitutional violation to the extent Defendants' searched the computers.[2]

22       In their brief, Plaintiffs rely on United States v. Comprehensive Drug Testing, Inc., 579

23  F.3d 989 (9th Cir.2009) (hereafter CDT I ), as providing the federal constitutional standard for

24  when and how computers should be searched.   CDT I was superceded on September 13, 2010 by

25  _____

26       [2]  California Penal Code Section 1524 requires a special master conduct a search that
   includes privileged documents, but it does not designate the method by which such materials may
27  be seized.

28                                          17

1  United States v. Comprehensive Drug Testing, Inc., 621 contained.3d 1162 (9th Cir. 2010)

2  (hereafter CDT II ).   The CDT cases arose out of a federal investigation into steroid use by

3  professional baseball players.   During the investigation, the United States developed probable

4  cause to believe that ten players had tested positive for steroids.   CDT II, 621 F.3d at 1166.   The

5  government obtained various search warrants and subpoenas for records and data located in the

6  facilities of Comprehensive Drug Testing, Inc., which ran the drug testing program for Major

7  League Baseball, and Quest Diagnostics, which performed the lab tests on the urine samples of

8  the baseball players.   Id.   The United States copied from the computers what the parties called

9  the "Tracey Directory".   Besides the records of the ten player, the Tracey Directory contained the

10  records of hundreds of baseball players and other athletes.   Id. at 1169-70.   One of the United

11  States' arguments on appeal was that once the government agents had examined the Tracey

12  Directory they could lawfully seize evidence it found of potential crimes by others (i.e. the test

13  results of other baseball players and athletes) because this information was in plain view.   Id. at

14  1170-71.   The District Courts rejected this argument as to persons other than the ten for which

15  their was probable cause.

16        On appeal, in CDT I, the Ninth Circuit discussed the issue of privacy as it relates to

17  computer storage of data.   The Ninth Circuit discussed what should be done when a warrant to

18  examine a computer hard drive or other electronic storage medium or when a search could result

19  in the seizure of a computer.   Originally, the Ninth Circuit set up five specific protocols:

21        1. Magistrates should insist that the government waive reliance upon the plain
          view doctrine in digital evidence cases . . . .

22        2. Segregation and redaction must be either done by specialized personnel or an
          independent third party . . . . If the segregation is to be done by government

23        computer personnel, it must agree in the warrant application that the computer
          personnel will not disclose to the investigators any information other than that

24        which is the target of the warrant. . . .

25        3. Warrants and subpoenas must disclose the actual risks of destruction of
          information as well as prior efforts to seize that information in other judicial fora .
          . . .

26        4. The government's search protocol must be designed to uncover only the
          information for which it has probable cause, and only that information may be

examined by the case agents . . . .
5. The government must destroy or, if the recipient may lawfully possess it, return non-responsive data, keeping the issuing magistrate informed about when it has done so and what it has kept . . . .

CDT I, 579 F.3d 989 at 1006.

An en banc panel of the Ninth Circuit superceded CDT I and issued CDT II.   The Ninth Circuit did not change the outcome of the case in CDT II, and found that:

One phrase in the warrant cannot be read as eviscerating the other parts, which would be the result if the "otherwise legally seized" language were read to permit the government to keep anything one of the agents happened to see while performing a forensic analysis of a hard drive.   The phrase is more plausibly construed as referring to any evidence that the government is entitled to retain entirely independent of the seizure.   [Here], [t]he government had no such independent basis to retain the test results of other than the ten players specified in the warrant.

CDT II 621 F.3d at 1171.   In the en banc panel decision, the Ninth Circuit did remove the five protocols from the majority opinion in CDI I.   However, the Ninth Circuit still cautioned law enforcement and lower courts about the risks involved in broad authorization to search electronic storage devices.   It noted that  over-seizing is an inherent part of the electronic search process and that judicial officers will have to be more vigilant "in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures." CDT II, 621 F.3d at 1177.   The Ninth Circuit concluded by warning that "[t]he process of segregating electronic data that is seizable from that which is not must must not become a vehicle for the government to gain access to data which it has no probable cause to collect." Id.

It appears the Ninth Circuits holdings in CDI I and CDI II offer little assistance to these particular Plaintiffs.   Defendants would be entitled to qualified immunity if the search of Plaintiffs' computers took place prior to the issuance of these decisions.   Moreover, the holding of CDT II does not readily apply here.   The issue in CDT II  was whether large amounts of data were being searched that included both the ten persons named on the warrant but also numerous

19

other persons not the subject of investigation at that point and whether the government could

seize wholesale data, sift through it and essentially use the data as a fishing expedition for

potential future warrants.   Here, there is no contention or allegation that Defendants reviewed

the confidential medical records at all, let alone in attempt to use these records to find other

crimes, other potential violators, and/or obtain other warrants.   Thus, based on the case law

cited by Plaintiffs, Plaintiffs have not shown that the complaint's allegations support a claim for

an illegal search of the computers' content.

**F.  Substantive Due Process and Equal Protection.**

Defendants move to dismiss the complaint's equal protection claim and substantive due

process claim.   Because Plaintiffs concede that they are not raising an equal protection claim,

any such claim is dismissed from the complaint.

Plaintiffs do claim that Defendants violated both their Fourth and Fourteenth Amendment

due process rights.   Certain wrongs or bad acts can affect more than a single constitutional right

and, accordingly, "can implicate more than one of the Constitution's commands." Armendariz v.

Penman, 75 F.3d 1311, 1320 (9th Cir. 1996).   However, the Supreme Court has held where a

claim can be analyzed under "an explicit textual source" of rights in the Constitution, a court may

not also assess the claim under another, "more generalized," source.   Graham v. Connor, 490

U.S. 386, 394–95 (1989).   "Where an amendment 'provides an explicit textual source of

constitutional protection against a particular sort of government behavior,' it is that Amendment,

not the guarantee of due process, that 'must be the guide for analyzing the complaint." Picray v.

Sealock, 138 F.3d 767, 770 (9th Cir. 1998).   The complaint alleges no factual predicate for any

substantive due process violation apart from the Fourth Amendment search claims.   "Because

the Fourth Amendment supplies an explicit textual source of constitutional protection against

unlawful searches, that Amendment, and not the more general right to privacy, governs the

constitutionality of the search."   Ramirez v. Butte–Silver Bow County, 298 F.3d 1022, 1028 (9th

Cir. 2002).   Thus, Plaintiffs claims must be analyzed under only Fourth Amendment standards.

Plaintiffs' substantive due process claims are dismissed without leave to amend.[3]

## ORDER

Accordingly, the court ORDERS that:

1.      Defendants' motion to dismiss is GRANTED;

2.      The amended complaint is DISMISSED with leave to amend;

3.      Plaintiffs are given leave to file an amended complaint on the Fourth Amendment issues, but not on any substantive due process claim or equal protection claim; and

4.      Any amended complaint SHALL BE FILED within thirty (30) days.

IT IS SO ORDERED.

Dated:    January 30, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[3]     Absent a showing that a pleading could not possibly be cured by amendment, unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment.  Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001); Chang v. Chen, 80 F.3d 1293, 1296  (9th Cir. 1996).  Because Plaintiffs' substantive due process claim is based on the same events as Plaintiffs' Fourth Amendment claim, allowing Plaintiffs to amend the substantive due process claim would be futile.

21